Good morning everyone. Our first case up for oral argument this morning is United States v. Rivers and Tucker number 23-1781. Good morning. Good morning Your Honor. Letondra Tucker's appeal concerns 924C and what Congress carved out when it added the limitation in relation to in the statute. Now when the Solicitor General argued Dubin before the Supreme Court, the SG took the position that in relation to Mr. Robin, what's the standard of review? The standard of review is a typical sufficiency of the evidence challenge. How? I want you to explain how we get there. I don't see this any other way than plain error. Here's what I want you to tell me I'm wrong. Explain to me how I'm wrong. What I think you're saying is that when a defendant gets up in any criminal case at the close of the government's evidence and says we've moved for a directed verdict, and then if the defendant puts on a defense at the end of the defendant's case, says we moved for a directed verdict, everything is preserved. Even though they didn't make any objection to the jury instructions, and at least to me that cannot be the law. Although it may feel counterintuitive, I believe that is the state of the law. Show me how we weave from sufficiency of the evidence into the legal issues in the jury instructions. So the judge, the district judge, totally unaware that there's a legal issue in the jury instructions because there's no objection to the jury instruction. But it all then boils back to the one little phrase we move for a directed verdict. And every defendant, I think it's like you're incompetent if you don't move for a directed verdict at the end of the government's case. Every defendant does in every single case. That's right. And so this procedural posture treads the same path as Dubin. And there, in oral argument, the Solicitor General clarified that a jury instruction challenge is separate from a sufficiency of the evidence challenge. Are you challenging the jury instruction? No, we are not. Okay. We're just challenging the sufficiency of the evidence, which implicates de novo review under the familiar Jackson v. Virginia standard where the evidence is viewed in the light most favorable to the government. I don't want to stop you from answering Judge Kirsch's question, but mine is similar. So you're not challenging the jury instruction. Correct. Which is, but you are challenging in relation to law. And you're attempting to do that through an appeal of the Rule 29 sufficiency of the evidence. Correct. Which seems like it's a backdoor way of getting around failing to object to the jury instruction. It very well could be characterized as that. But on the other hand, that is what this court has, this court's case law has. What are you the ability to be able to legally challenge an issue just based on a bare bones move for insufficient evidence at the end of the trial? So this is exact, this is the same posture in this circuit as U.S. v. Castillo, which is a 2005 case. And there, the sufficiency of the evidence was reviewed de novo. The jury instruction there was reviewed for plain error. We're simply not raising the jury instruction aspect. But in that case, the sufficiency was addressed, but it was an evidentiary issue, not a legal issue tangled in. I understand you're saying the evidence was insufficient here in relation to, but you're also tacking on that the in relation to legal aspect was wrong. And that was a key feature of Castillo as well, because that case similarly was a possession in furtherance of, another prong or way of committing, violating 924C. And there was legal analysis there as to what in furtherance of met. And so same here, we are simply asking that this court engage in statutory interpretation, which is reviewed de novo, as to what in relation to means, and then applying that under the de novo, but Jackson v. Virginia standard, where the evidence is viewed in the light most favorable to the government. But in terms of- In Castillo, they did object to the jury instruction, correct? No. On appeal, they were- Oh yeah, correct, correct. Which is why I asked you, are you objecting to, are you appealing the jury instruction? And you said no. Right, because we think that we can win under the same, or that wouldn't change the outcome. And again, the whole impetus for this appeal was the Supreme Court's decision in Dubin. And so there's a strategic decision to follow the same procedural posture as Dubin. And just as the government in that case said no, a jury instruction challenge is separate from a directed verdict challenge, that's the same path we're taking here. So to get back to what the legal standard actually is, in Dubin, the government took the position that in relation to means the same thing in the aggravated identity theft statute as 924C. And it quoted Smith for the proposition that in relation to equates to facilitating. In other words, the official position of the U.S. was that in relation to in Smith is facilitating, and we think that the court should heed that guidance in this case. But the Supreme Court in Dubin specifically said that their ruling there does not change its 924C precedent. So how do we get around there? You're asking us to change those. No. So if we think about a causal element, like in relation to, which there's a wide spectrum of how tight or malleable the standard can be. On the most malleable end, on the loose end, we have this potential of facilitating standard. On a far more rigid end is what the Supreme Court adopted in Dubin, which is at the crux of the underlying criminality. I'm not asking for this court to adopt that standard. I'm asking the court to just hew to what Smith originally held, which is that in relation to means facilitate, which is somewhere in the middle. And so to that footnotes point. If it does, does your client still lose? If it does mean facilitate instead of potential to facilitate, does your client still lose? No, we went under the facilitate standard. Why? Based on the evidence here. Because the gun was never displayed? Because, yes, that'd be part of it. The government did not articulate any sort of viable theory below as to how this gun, the gun that Tucker carried, facilitated the crime. All it said, all the government said below is that they wanted to be successful. And that's far too low a level of generality. Now on appeal, the government offers this theoretical means of protection. But that too is far too malleable. Not only did the government not advance that below, but here there's a difference between a theoretical means of protection and evidence that the defendant actually intended to protect himself or protect or, you know, in order to facilitate. But what would be required? You know, I'm just curious as to the difference. Let's say he wore the gun on his hip, you know, like a cop. You know, would that facilitate the carjacking? Absolutely. And we have cases like that. That's Patterson, that's Haynes. And there the facilitation is that the gun is used as an indispensable prop. And that's a viable, articulable theory where nonspecific evidence supports that theory. If the government had introduced evidence that he was aware that the victim would be armed, right, and he was worried about that danger, I think that's a different world. And Counsel, doesn't Smith tell us that the potential to facilitate is something we look to as well? No. No, absolutely not. I recognize, and then I would like to answer and then reserve. The potential to facilitate discussion comes in the context of the Ninth Circuit's recount of the legislative history. And you can't square that potential of facilitation discussion, if that is the operative legal standard, with everything else in the opinion. Nor in the subsequent 924C cases does the Supreme Court ever refer to that. And finally, I would again point to Dubin and the position that the United States took in that case. Thank you. Thank you. Richard Dreykosen. Good morning. Good morning. Madam Chief Justice, may it please the Court. My name is Justin Dreykosen. Today I represent Aniko Rivers. The government agrees that Mr. Rivers' case should be remanded for resentencing under 4A1.1E, the amendment. It's retroactive, so I'd like to focus my on 3C1.2, whether that ought to have applied to Mr. Rivers' case. Here we have the context of a car chase, and it's undisputed that Mr. Rivers is the passenger. In every other circuit, in a reckless driving contest, to consider whether a passenger ought to receive a 3C1.2 has said there's got to be evidence of direct or active participation by that passenger  Mr. Dreykosen, are you challenging the sufficiency of the district court's factual findings? Are you just challenging the legal conclusion that this isn't reckless endangerment? Yeah, not necessarily. I think there's a, right, it's clear error. It's got to be a yes or a no. Fair enough. Are you challenging the district court's factual findings as to the reckless endangerment enhancement or just the legal application? No, Your Honor. We're just challenging the legal application. Basically that the district court's findings are not sufficient as a matter of law in order for a passenger to receive a 3C1.2 enhancement, and that's a de novo review by this court. You know, if we look at application note 5, that says that a defendant can be responsible for his own conduct and the conduct of his driver or, you know, other defendants. If he aids and abets, counsels, commands, induces, procures, or willfully causes, right? And that's a reflection that a passenger in a reckless getaway car, the default should not be that the passenger gets this 3C1.2 enhancement. There should be some sort of behavior by the passenger which calls for this 3C1.2 because at its base, this is an obstruction enhancement. This is when arrest is imminent, when law enforcement officers are on our tail, what behavior is, you know, being displayed. And in this case with Mr. Rivers, we do not have that. The district court relied on the fact that Mr. Rivers initiated the carjacking and that after there was this very severe crash, Mr. Rivers did not just stay in the vehicle. He got out and fled on foot. But it was more than just fleeing on foot, wasn't it? That he took them across a highway, down a very steep, dangerous embankment, in fact one of the officers got hurt on the embankment, into a creek. Why isn't that sufficient to qualify for the enhancement? Because I don't think that the flight on foot by itself constitutes the sort of reckless endangerment that this sentencing enhancement is contemplating. The drive, the chase, tremendously dangerous. We've conceded that in our briefs. But the flight on foot, you've got a different power dynamic. You don't have Mr. Rivers carrying any sort of gun when he's flying on foot. We're in a very different posture if he's carrying a gun while he's flying on foot. Here you have an armed officer chasing an unarmed individual who's flying on foot. And so you look at the Cespedes case out of the 3rd Circuit, Johnson case out of the 11th Circuit, Reg's case out of the 8th Circuit. Each one of those cases said that flight on foot alone, as a matter of law, is not sufficient to support this enhancement for a passenger. But again, isn't this more than just flight on foot? You have to look at the totality of the circumstances and the conditions that he was fleeing in and where he forced the flight on foot. I don't think that the District Court was as focused on the flight on foot. I think it was more of the car chase that was tremendously dangerous. I think the flight on foot certainly played, maybe played into his analysis, but it doesn't get you to an Thank you. Thank you. Mr. Simpson? Good morning. Good morning, Your Honors. May it please the Court, I'm Scott Simpson on behalf of the United States. I'll address the defendant's challenges in the same order in which the Court has just heard them. I actually did not hear counsel for Mr. Tucker concede that in relation to element of 924C would be met here under the Court's current law, which is reflected in the injunction. Mr. Simpson, if we decided this case the way that, put aside the standard, we may have some cleanup to do on the standard of review, okay, whether it's plain error or de novo, but I suspect you don't care all that much in relation to this case, okay, because even if it's de novo, I think your position is the potential to facilitate is enough. And I think every circuit has held that. So my question is, wouldn't we be creating a circuit split and going against all the existing law if we held that in relation to does not include a potential to facilitate? Yes, I think you would. And I think you would, in fact, be going against Supreme Court precedent. In the Smith case, the Court clearly includes that potential for facilitating language. And that, again, is reflected in this case law and in the Court's standard pattern jury instruction. Now, I think when we talk about the standard of review, we need to make clear what we're talking about the standard for. To the extent that they're saying the evidence was insufficient to convict him on that charge under the Court's current law, reflected in the pattern jury instruction, they have a very, very difficult standard here. This Court has said that that standard is almost insurmountable. You know, the question isn't whether you are That's preserved. I think the bigger challenge is what are we reviewing to novo and what are we reviewing for plain error? Because Mr. Tucker's argument is partially sufficiency of the evidence. It wasn't sufficient to convict him on this count. And then part of it is it wasn't sufficient because the law is wrong. But, Your Honor, I think we first need to start with that first question. I think they apparently are, as far as I can read their briefs, I think they are actually saying even under the current law, the evidence is insufficient. I think they're saying that, too. I'm more focused on what's the standard of review for the second piece of that. They're arguing it's de novo because they raised a general Rule 29 motion at the end and that that preserves all factual challenges as well as legal challenges under insufficiency. It is very complicated, Your Honor. I agree with that. Part of the reason it's complicated is that the Court's current law, which they're challenging, is reflected in the pattern jury instruction to which they agreed. So I think that should inform how the Court sees the standard of review on that legal challenge, so to speak. Obviously, our position— But does that mean that we say—I think this is an interesting question. I understand the defendant's argument. It's not frivolous. But to say that we make a sufficiency challenge, therefore we preserve everything. And when you take the facts and you apply them—forget the existing law, okay? I understand that's their argument. They have a very, very difficult challenge to say if we apply the facts to the existing law, Tucker wins. It's a very, very hard argument. But I think the argument is if we apply the existing facts to what the law should be, Tucker wins. I think that's a hard argument, too. But even if they say we apply the law to what the law should be, and then us, in reviewing what the law is or what the law should be, do we review that for plain error because they didn't object to what the law is in the district court? So, in other words, we never get to the question of what the law should be because we just apply what the law is. And we say it would be plain—under plain error, maybe our law is wrong, okay? But that's not an obvious error for the district court to correct. In other words, the district court couldn't correct anything. The district court just had to apply our law, and therefore, it's not plain error. They lose under plain error. I think they would agree with that. I hope they would agree with that, Your Honor. I'm not even sure I've heard that. We think it should be waiver. That's our first position. Our second position is that it should be plain error. And as the court said, they would lose under that. It would go against not only this I could just kind of—I don't think we've actually— I want to—actually, before you do that, I just want to follow up on the standard of review. How do you respond to Mr. Tucker's argument about Castillo and some of our other case law that has loose language that a general Rule 29 motion for acquittal preserves all arguments that might be bound up there? Your Honor, I've dealt with that law before. Frankly, it doesn't seem to make sense. There are statements, as the court has alluded to, there are statements in the case law to the effect that if you do say in that motion what you're challenging, then you're preserving that, but you're waiving everything else. That doesn't make sense. If you preserve that, you waive everything else, but then if you don't specify what you're preserving, then you preserve everything. So is your response that our law is not correct, that it's just loose language in our law, or that it doesn't make sense, but it's our law, so we have to apply it or change it? What's your response? I think it—I know that it would be difficult for this panel to change the law because it would be the law of the circuit. I think that our bottom line would be even under plain review, and my understanding is that the court would be applying plain review even under that existing law on preserving— Well, that's not—the argument is that we should apply to no fault because it was preserved with this general Rule 29 motion, even the legal issue. And all of this gets to the next point, which is, as the court has said, it's very messy. Since Mr. Tucker is seeking to overturn existing circuit law and, again, we believe existing Supreme Court law, which I suppose they hope to get to that point at some point, they have the compelling reason. So even if it's de novo review in a technical standard of review sense, they have to satisfy a compelling reason to overrule current circuit law. So maybe the answer is it ultimately doesn't matter what the initial appellate standard of review is since they have to satisfy that compelling reason standard. I could just kind of talk a little bit about what the evidence is, and I believe this goes a little bit to Judge Kirsch's question earlier. We believe, and I believe this was a question also to counsel for Mr. Tucker, we believe that the in relation to element was satisfied even if we take out the potential for facilitating language. And the reasons for that, let me just a few sentences on the evidence, what the evidence showed. The Cobrae was on the ground outside the BMW after Mr. Tucker jumped out of the car from the driver's side door and before Mr. Rivers jumped out through the same door. The front passenger door was pinned shut so Mr. Rivers came out. But you can see in the video, that video is government exhibit 22C, you can see that the Cobrae is on the ground, this large black pistol is on the ground right after Mr. Tucker exits and before Mr. Rivers exits. Also Mr. Tucker's DNA was found on the 9mm Cobrae. Only two men in the car. We know that Mr. Rivers had two guns. One of them he had been firing outside the window. That was the Taurus. The other one was also with the Taurus under his passenger seat after the accident. So the reasonable inference, and that's what we're talking about here, what the jury can find, the reasonable inference was that Mr. Tucker had the Cobrae with him in the car either on his lap or on his waistband and he dropped it when he got out of the car to run away. I believe Counsel for Tucker has admitted that if, and I believe it was in response to a question from the court, if a defendant has a gun on the holster then it's certainly in relation to. But here he had the gun somewhere on him, somewhere very close, so close that he dropped it upon exiting the car. So he certainly carried the Cobrae, at least for protection and a sense of security. He brought, he put himself in a very dangerous situation and he brought the tool that he needed for that situation. Now again, so to address the legal challenge here, I would emphasize that not only are we talking about the court's case law, the Supreme Court's case law, but also that is reflected in the pattern jury instruction. He seeks to take out this phrase, have the potential of facilitating, and the defendant's first problem with that we believe is that even if we were to take out that phrase, this would still be an appropriate, a proper conviction for carrying a pistol in relation to the carjacking. The 9mm certainly facilitated Tucker's participation in the carjacking by providing protection and a sense of security. And in fact, we mentioned this in our brief, it seems to me that the fact that they include this legal challenge in their brief and here in oral argument reflects the fact that they apparently recognize that they satisfy, that they don't have a good position on the facts here. And under the law, we've already talked about this, this challenge is a very tall order, both procedurally and substantively procedurally because we have this potential problem with waiver or whatever we want to call it, and even under plain error review, it would fail. It reflects the statements of this court and the Supreme Court. The actual language, the actual language of the jury instruction comes from the Supreme Court's decision in Smith where the court says a gun must at least facilitate or have the potential for facilitating the underlying offense. In fact, elsewhere in the Smith decision, this is on page 238, the court says that in the quote-unquote ordinary case under section 924C, in the ordinary case the court says the ordinary case involves the gun providing a means of protection or intimidation. Certainly here that at least that is what happens. So that's the law and only the Supreme Court can change it. A few words on the Dubin decision on which they rely. That's obviously on an entirely different statute. The Supreme Court said besides the other things that have already been said this morning about Dubin, the Supreme Court itself said in Dubin that the term in relation to is quote particularly sensitive to context. I think this case bears that out. So moving on to the appeal by Mr. Rivers, if I could. He, of course, was the passenger. I think it's striking, not surprising, that he does not challenge his 924C conviction. Since the witnesses saw him firing his .40 caliber Taurus while leaning out the window of the car during the initial stage of the getaway. The application notes to 3C1.2 say that the defendant is responsible for his own conduct and for any conduct that he aided or abetted, induced or procured. And there are a few other verbs in there as well. Do you think the district court was relying on the aiding and abetting conduct as opposed to his own active participation in it? I think very much the court was relying on both of them. And what the case law shows is that where a defendant is engaged in activity like this, and this is partly the Byrd decision from the Sixth Circuit that we cite in our brief, where the court is engaged in something like this and the defendant is demonstrating, which is not surprising here, is demonstrating a great desire and motivation to get away. We can infer from that that he's aiding, abetting, inducing or procuring the driver's own activities. As the district court pointed out, Mr. Rivers started this carjacking. He's the one who started the whole thing. He's the one then who ordered the victim out of the car at gunpoint. He's the one, Mr. Rivers was the one, who yelled at Mr. Tucker to unlock the car so they could get in and get away. Rivers was the one who fired at the three bystanders as they left the scene. Now, I'm not saying that that use of the gun itself is part of the dangerous enhancement here. What I'm saying is that Mr. Rivers' activity in shooting at the bystanders was presumably to ensure their escape, and also that itself increased his own personal interest in getting away quickly. And Rivers then stayed in the car as they took that 12-minute joyride that would normally take 20 minutes, speeding and blowing through a stop sign and weaving it out of traffic. So, Your Honors, we encourage the court to affirm here. One point on the remand in light of the amendment to the guideline on status points, that should be a limited remand, only limited to what would be available under a motion under 3582C2. Thank you, Mr. Simpson. Thank you, Your Honors. We'll give you your two minutes. Thank you, Your Honor. I'll try and get through two points, one on the standard review and one on the state of the law. In regards to the standard of review, on pages 15 to 16 of the reply brief, I quote United States v. Mays. Mays discusses this, and that is another basis for the fact that a directed verdict is reviewed de novo, and everything is preserved, and the basis for that is the effect. The Mays language definitely suggests that. What gives me pause is there's no citation behind the initial language. There are citations later on, but for the proposition that legal issues are caught up in there, there was no citation. So the advisory committee notes, I believe, were a citation in there, and they say that parties to a criminal case, unlike civil parties, have no general obligation to support the motion with specific reasons. And that's in, you know, will you follow? It's certainly on sufficiency of the evidence and on evidentiary issues. I think the state of the law says that. It's the legal point that I'm caught up on because it seems like you didn't object to the jury instructions at the trial, and it's a backdoor way to get de novo review of legal issues where the district court was not given an opportunity to address it in the first instance. And it's one thing to say that in a rehab situation where the law has changed during the interim, but something that was available to the defendant to raise where the defendant didn't raise it before the district court, it just seems like a backdoor way that's not right. I recognize that discomfort. I think maybe that's the best word for it. And to the government's point, and maybe what I'm inferring or hearing is that it should inform the standard of review. The government didn't offer any legal basis that then requires the defendant to challenge the jury instructions as well. And so to the extent— What's the incentive then to ever get something cured on the front end? That you'd wait and just roll the dice, and if you're convicted, then bring it up for the first time on appeal? I'd say that those are way worse odds than flagging it below. I mean, if you or I were trying the case, we would bring that up. His counsel did not. And you'd want the jury to be aware of that, particularly when talking with Mr. Tucker. The whole reason why he went to trial was the 924C charge. Right. This is not— That's it. Right. It was the 924C charge. And if I could make just one quick point on the law. Sure, go ahead. Judge Kirsch, to your point about a circuit split, I believe that it's not the potential facilitating. It's not the legal standard in the Ninth. I have not canvassed all the circuits. I don't think it's the case, though, in every circuit. I'd be happy to supplement briefing on that issue if you'd like. And then the final point I'd make is that the government still is not contending with the fact that the Solicitor General represented to the United States that Smith adopts a facilitating standard. And the fact that the government didn't address Dubin in its response brief and still today is not addressing what the Solicitor General said I think is quite problematic. Thank you. Thank you. Mr. Darkosin, we'll give you your full minute as well. Thank you. Just two quick points. First, to Your Honor's question about flight on foot, when you were asking me, I'd direct you to our briefing on the Reyes-Osegura case out of the Ninth Circuit, Gold out of the Fifth Circuit, Mucus out of the Sixth Circuit. It says mere flight, even if it results in arm or suit, does not justify the enhancement. It's a categorically different degree of dangerousness, flying on foot, than a car chase. And the second thing I would add is that the government brought up a lot of offense conduct. The PSR specifically says it's not basing its recommendation for a 3C1.2 on the gun behavior that Mr. Rivers undertook. That was terrible conduct, right? He's already getting punished for that. And if you want to talk about severity of the conduct does not inform the applicability of this enhancement, I'd ask you to look at the Riggs case out of the Eighth Circuit. There you had a defendant who shot the clerk and pistol-whipped the clerk, and yet the Eighth Circuit said this enhancement doesn't apply because that did not inform the defendant's behavior during flight. This case should be remanded for resentencing. Thank you. Thank you, Mr. Dreykoson. And I understand you were appointed to represent Mr. Rivers. Thank you very much for taking on the appointment and for your strong advocacy and written work on behalf of your client. Thank you very much. Thanks to all counsel in the case. The case will be taken under advisement.